IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )           No. 3:24-CR-19-KAC-JEM
                                    )
HENRI L. EWING,                     )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

This case is before the undersigned for report and recommendation on Defendant Henri

Ewing's reopened suppression hearing [*See* Doc. 508]. *See* 28 U.S.C. § 636(b). Defendant Ewing

is charged with drug trafficking and firearms offenses [Doc. 3 pp. 1–3, 7–8]. These charges arise

in part out of the search of Defendant and his vehicle following his arrest during a traffic stop on

June 27, 2023 [Doc. 399 p. 1]. Defendant moved to suppress all evidence flowing from the stop

and the search of his vehicle, arguing that these actions violated his rights under the Fourth

Amendment [Doc. 256 pp. 1–2].

On April 1, 2025, the undersigned entered a Report and Recommendation summarizing the

facts of the case as follows:

> In the early morning hours of June 27, 2023, Sergeant Jared
> Hall of the Rockwood Police Department ("RPD") stopped a vehicle
> for speeding. Sergeant Hall recognized the distinctive blue
> Chevrolet Camaro as belonging to an individual whom he knew did
> not have a valid driver's license. Sergeant Hall approached the
> vehicle and found that instead of that individual, Defendant was the
> driver. Defendant presented a valid driver's license and said he
> recently purchased the vehicle. Officers attempted to arrest
> Defendant after a records check revealed an outstanding arrest
> warrant, but Defendant resisted arrest. After restraining Defendant,
> the officers seized two guns from Defendant's person and illegal
> drugs from a fanny pack worn by Defendant. Officers then searched
> the vehicle and seized drug paraphernalia, knives, ammunition, and

two cellular telephones. Officers also seized and searched two safes located in the vehicle.

[Doc. 399 p. 2]. Defendant argued that Sergeant Hall lacked probable cause to conduct the traffic stop and asked the Court to suppress all evidence flowing from the stop as fruit of the poisonous tree [Doc. 256 pp. 5–6]. He also objected to the warrantless search of two safes located in his vehicle [Doc. 382 pp. 5–6]. The undersigned recommended denial of Defendant's suppression motion, finding Sergeant Hall had probable cause to stop Defendant's vehicle for speeding and properly searched Defendant, his vehicle, and both safes incident to his arrest [Doc. 399 pp. 2, 23–24].

Six months after this ruling, Defendant Ewing moved to reopen the suppression hearing to present evidence bearing upon Sergeant Hall's credibility, namely that Sergeant Hall was held in civil contempt for violating an order on the sale of marital property [Doc. 508 pp. 1–2]. The undersigned granted Defendant's motion to reopen [Doc. 522 p. 2]. On January 12, 2026, the undersigned held an evidentiary hearing on the newly-discovered evidence relating to Sergeant Hall's credibility [Doc. 568, Minutes]. Defendant argues that the evidence of Sergeant Hall's dishonesty relating to his divorce proceedings reveals that his testimony at the suppression hearing that Defendant was speeding and that Defendant consented to the search of the safes is not credible.

After reviewing the evidence, the arguments of the parties, and the relevant law, the undersigned continues to find Sergeant Hall's testimony that Defendant was speeding to be credible. Accordingly, the undersigned maintains the conclusion that Sergeant Hall had probable cause to stop Defendant's vehicle for speeding. The undersigned's prior recommendation on the search of the safes did not turn upon Defendant's alleged consent, so the undersigned need make no finding regarding Sergeant Hall's credibility in that regard. Instead, the undersigned continues to find the officers properly searched Defendant's vehicle and the containers therein incident to

2

his arrest. Accordingly, the undersigned continues to recommend that the District Judge **DENY** Defendant's motion to suppress [Doc. 256].

## I.      SUMMARY OF THE EVIDENCE AND ORAL ARGUMENT

The parties appeared before the undersigned on January 12, 2026, for the reopened evidentiary hearing on the issue of Sergeant Jarred Hall's credibility. Assistant United States Attorney Brent Nelson Jones appeared on behalf of the Government. Attorney Christopher Scott Irwin represented Defendant Ewing, who was also present.

The Government proffered the following chronology of events as context for Sergeant Hall's testimony. AUSA Jones related that on October 14, 2020, Sergeant Hall answered interrogatories in relation to his divorce proceedings. On March 3, 2021, he gave a deposition in relation to the divorce proceedings. The divorce proceeding was held on April 14, 2021. The next day, on April 15, 2021, Sergeant Hall sold two vehicles. On October 27, 2021, the Morgan County General Sessions judge held a contempt hearing and issued the Order of Civil Contempt that is attached to Defendant's motion [Doc. 508-1].[1]

The Government recalled Sergeant Jared Anthony Hall, who testified that he previously provided testimony in this case regarding a traffic stop involving Defendant Ewing in 2023. He agreed that after that evidentiary hearing, District Attorney Russell Johnson contacted AUSA Jones about a contempt filing from Sergeant Hall's divorce proceeding in 2021. Sergeant Hall stated that he is familiar with sworn and written testimony that he provided in connection with his divorce proceedings beginning in October 2020. Sergeant Hall said he reviewed an interrogatory from October 14, 2020. He agreed the interrogatory contains a false statement. He agreed that one

---

[1]      The traffic stop at issue in Defendant's suppression motion occurred around 4:00 a.m., on June 27, 2023 [Doc. 399 p. 12].

question in the interrogatories asked about any extramarital romantic or sexual relationships during the marriage or period of separation, including the contact information of the person and any funds or gifts he gave to the person. Sergeant Hall agreed that he answered "no" to this question, but that answer was a false statement. Sergeant Hall agreed that on March 3, 2021, he gave a deposition in relation to his divorce proceedings. He acknowledged that in the deposition, he downplayed the sexual relationship he had outside of marriage.

Sergeant Hall stated that his divorce proceeding occurred on April 14, 2021, and did not go well for him. He said the judge instructed him to sell two vehicles, which had been in his name, and to give one-half of the proceeds to his ex-wife. Sergeant Hall said his ex-wife had sold a car the preceding February. He said he asked his attorney as they exited the courthouse after the hearing what he needed to do to "end this now" and for these matters to be over. Sergeant Hall stated that his attorney said all that was left to do was to sell the two cars. Sergeant Hall stated that he sold those cars two days later. He said during the "court proceedings," his ex-wife was asked about the titles to the two vehicles, and she said she did not know where the titles were located or whose name was on the titles. Sergeant Hall said the last time he was at his and his ex-wife's house prior to the April 2021 divorce proceeding was in the late summer or early fall of the prior year. He said that he applied for lost titles for the vehicles because the titles were lost to him as he did not have them and did not know where they were. He said he sold both vehicles to Rick Crawford. He agreed that he has since acquired both vehicles back from Mr. Crawford. He said his mother passed away in July 2020, and after he settled his mother's estate and paid his debts, he purchased the vehicles back from Mr. Crawford with the money he had left. Sergeant Hall agreed that he did not give his ex-wife half of the proceeds from the sale of the two vehicles.

4

On cross-examination, Sergeant Hall acknowledged that his testimony at the suppression hearing was under oath and that he was under oath during his testimony. He agreed that he was also under oath during the divorce proceedings. Sergeant Hall affirmed that the Roane County Order of Civil Contempt found that he willfully violated the court's directive and that he disposed of property with the intention of depriving his ex-wife of her interest. He acknowledged that as a law enforcement officer, he understands the importance of sworn statements and that courts rely on sworn statements. He agreed that "under penalty of perjury" requires accuracy and not approximation. He agreed that his ex-wife accused him of adultery and that he filed a written response to an interrogatory in which he denied committing adultery. He acknowledged that this response was signed and filed with the court. Sergeant Hall affirmed that he gave a deposition in connection with his divorce proceeding, and in the deposition, he denied committing adultery. He agreed that later in the divorce proceeding and while under oath, he acknowledged that those answers were misleading. Sergeant Hall said he subsequently stipulated to committing adultery.

Sergeant Hall testified that the court's order from April 14, 2021, governed the disposition of the marital property including the vehicles. He said on April 15, 2021, he applied for a replacement title for the Dodge vehicle. He acknowledged that he signed the application for the replacement title under penalty of perjury. He agreed that he applied for the replacement title because he intended to sell the vehicle. Sergeant Hall said he sold the vehicle the next day. He agreed that he did not pay his ex-wife her share of the proceeds at the time of the sale. Sergeant Hall affirmed that in July 2022, he got the Dodge back. He did not recall if the documentation of the transaction listed the vehicle as a gift, but he said he paid for the cars.

Sergeant Hall agreed that he has no body camera or dash camera footage from the traffic stop of Defendant. He also acknowledged that there is no radar reading from the stop. He agreed

5

that the evidence that Defendant was speeding comes solely from his testimony, and the Court is relying solely on his testimony to determine whether that evidence should be suppressed.

Attorney Irwin argued that Sergeant Hall presented sworn testimony in multiple proceedings including the prior suppression hearing. He said Sergeant Hall's sworn denials were later found to be false and a judge found him in contempt. He said Defendant is not asking to relitigate those matters. Instead, he asks the Court to consider Sergeant Hall's prior false testimony as it relates to his credibility. Mr. Irwin asserted that no independent recording or corroboration of the basis for the traffic stop exists. He maintains the Government's demonstration of probable cause rests solely on Sergeant Hall's testimony and whether it is reliable. Mr. Irwin argued that on the record before the Court, the Government has not met its burden.

AUSA Jones apologized for not having this evidence relating to Sergeant Hall's credibility at the suppression hearing. He said once he received this information, he provided it promptly to defense counsel. AUSA Jones argued that the Court should consider this evidence as it relates to Sergeant Hall's credibility, which he acknowledged is "crucial" in this phase of the case. He said the Government does not downplay Sergeant Hall's actions in his divorce proceedings, but he pointed to Sergeant Hall's long experience as a police officer. He asked the Court to consider that the 2023 traffic stop was two years after the divorce proceedings. AUSA Jones argued that the divorce proceedings were contentious, involved accusations of adultery, and Sergeant Hall was ultimately held in contempt. He said, nevertheless, the divorce proceeding was a personal matter and Sergeant Hall's actions should be taken in that context.

AUSA Jones maintained that Sergeant Hall's testimony at the suppression hearing is sound and that he had multiple bases to stop Defendant. Sergeant Hall testified that he thought another person was driving the car, and he also witnessed Defendant speeding. He argued that the Court

6

must consider Sergeant Hall's false statements in his divorce proceedings in the context of the whole of his testimony at the suppression hearing and should find that the traffic stop was legal.

Mr. Irwin asserted the issue in this case is whether Sergeant Hall is reliable. He said Sergeant Hall gave sworn testimony on multiple occasions, which he acknowledges to be misleading, and his actions led to a judicial finding of willful misconduct. Thus, Mr. Irwin asserts that the Court's reassessment of Sergeant Hall's credibility is appropriate. Mr. Irwin pointed out that Sergeant Hall got one of the vehicles back as a gift in 2022. He said this evidence bears upon Sergeant Hall's reliability.[2]

## III.    ANALYSIS

Defendant argues that the probable cause for the traffic stop and whether he gave consent to search the safes in his vehicle are issues that both turn upon Sergeant Hall's credibility [Doc. 508 p. 4]. He contends Sergeant Hall's false sworn statements and willful violation of the court's orders in his divorce proceeding are material to his credibility [*Id*.]. Defendant asks the Court to reevaluate the credibility of Sergeant Hall's statements that Defendant was speeding and that Defendant gave consent to search the safes and to make new factual findings and legal conclusions considering this new evidence [*Id*. at 5–6].

At the October 1, 2024 evidentiary hearing, Sergeant Hall testified that he observed the blue Camaro drive past him at a high rate of speed, which he estimated to be more than fifty miles per hour, in a thirty-mile-per-hour zone [Doc. 378, Transcript, pp. 8, 30]. Sergeant Hall also

---

[2]    Prior to the January 12 evidentiary hearing, Defendant filed a motion in limine asking to cross examine Sergeant Hall about three specific "instances of conduct" that bear upon his credibility [Doc. 552 pp. 1–2]. At the hearing, the Government had no objection to the motion in limine, and the undersigned granted the motion. Nevertheless, defense counsel's cross-examination and argument related to only one of the three alleged specific instances, that is "[a] judicial finding holding Officer Hall in willful civil contempt for violating court orders" [*Id*. at 2].

7

testified that his radar was on but it did not detect the Camero's speed due to the angle of his patrol car and that he knew the Camero was exceeding the speed limit based upon his twenty-five years of experience in traffic control and the training he received in visually determining speeds while certifying as a radar instructor [*Id*. at 8–9]. Sergeant Hall further testified that while standing with Defendant after his arrest and while the EMS examined Defendant and other officers searched Defendant's vehicle, Defendant offered to assist the officers with opening the second safe and "gave assistance and permissions" regarding the safes [*Id*. at 25–26].

Defendant also testified at the October 1, 2024 evidentiary hearing [*Id*. at 33]. Defendant said he was not speeding on the morning of the stop because his car, which was in "ill repair," was not capable of speeding [*Id*.]. He testified to several mechanical issues with his car that day [*Id*. at 33–34]. He said he had just replaced the thermostat earlier that morning because the car was overheating and the distributor cap, spark plugs, and ignition coils were all "bad" [*Id*. at 33]. He said only five cylinders in the engine were firing and that he needed to drain and flush the vehicle's fluids and to rebuild the carburetor [*Id*.]. He also related that the power steering was not working, which made it hard to drive on curvy roads [*Id*. at 34]. Defendant also testified that he did not give consent to search his vehicle, nor did he assist with opening the safes [*Id*.]. Defendant declined to say that the vehicle was incapable of reaching a speed of more than thirty miles per hour, but he stated that he could not have got his car up to thirty miles per hour in the distance he had as he crossed the bridge to Sergeant Hall's location [*Id*. at 36]. Defendant testified that when Sergeant Hall approached his car after stopping him, Sergeant Hall said he stopped Defendant because he thought Defendant was Michael Ledford [*Id*. at 36–37].

Based upon the testimony at the evidentiary hearing, the undersigned found that "[a]lthough Sergeant Hall was not able to get a radar reading on the vehicle, he visually assessed

8

that the vehicle was traveling at more than the posted speed limit of thirty miles per hour" [Doc. 399 p. 12]. The undersigned also found that "[o]fficers located two safes in the vehicle and searched them on the scene" [*Id*. at 14]. "The undersigned ma[de] no findings of fact on any statements by Defendant following his arrest because the undersigned addresse[d] the constitutionality of the search of the safes without reaching the question of consent" [*Id*. at 14 n.5].

Defendant previously challenged the credibility of Sergeant Hall's testimony that Defendant was speeding, arguing that it is improbable that Sergeant Hall's radar, his in-car camera, and his body camera were simultaneously not working that morning [Doc. 382 pp. 2–5]. Defendant also asserted that Sergeant Hall's testimony is contradicted by his (Defendant's) testimony about the vehicle's mechanical problems making speeding difficult [*Id*. at 4–5]. Defendant argued Sergeant Hall stopped him because he believed Michael Ledford, an individual whom Sergeant Hall knew lacked a valid driver's license, was driving, and not for speeding [Doc. 256 p. 5; *see* Doc. 382 p. 3]. The undersigned found that Sergeant Hall's testimony was plausible, internally consistent, and uncontradicted by any evidence other than Defendant's testimony [Doc. 399 pp. 17–19]. The undersigned also found that Defendant's testimony regarding why he was driving his car in "ill repair" that morning and whether it could reach speeds of over thirty miles per hour was internally inconsistent [*Id*. at 18–19]. Defendant now contends the new evidence of Sergeant Hall's prior false sworn statements and disregard of court orders in his divorce proceedings tips the balance in the credibility contest between he and Sergeant Hall away from the officer.

As the undersigned previously discussed, a court may credit a witness's testimony "so long as [it] is facially plausible, internally consistent, and uncontradicted by extrinsic evidence." *United States v. Bowman*, No. 1:21-cr-56, 2022 WL 1518251, at *7 (E.D. Tenn. Feb. 11, 2022) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)), *report & recommendation adopted by*

9

*United States v. Fort*, 2022 WL 1117101 (E.D. Tenn. Apr. 14, 2022). Sergeant Hall's false sworn statements in relation to his divorce proceeding are serious and reflect poorly on his character and his general credibility, but viewing the totality of the information presented at both evidentiary hearings, and considering Sergeant Hall's prior false statements in his divorce proceedings and the Order of Civil Contempt, the undersigned continues to find Sergeant Hall's testimony that Defendant was speeding to be credible and to provide probable cause for the traffic stop.

To start, Sergeant Hall was trained and experienced in estimating speeds [Doc. 378 pp. 8–9]. *See United States v. Parker*, No. 3:10–CR–133, 2011 WL 1099863, at \*10–11 (E.D. Tenn. Feb. 14, 2011) (finding an officer's training and experience in estimating vehicle speeds contributed to probable cause to stop defendant for speeding), *report & recommendation adopted by* 2011 WL 1044146 (E.D. Tenn. Mar. 21, 2011), *aff'd* 530 F. App'x 449 (6th Cir. 2013). He had the opportunity to observe Defendant's speed as Defendant drove through an intersection, passed him, and went up a hill [*Id*. at 8, 19]. Although Sergeant Hall observed the vehicle in the early morning when it was dark, the photographs introduced by defense counsel at the October 1, 2024 evidentiary hearing show streetlights on both sides of the intersection [Exh. 1C, 1F, & 1H]. Moreover, although Defendant testified about his car's disrepair, he declined to say that it could not exceed thirty miles per hour [*Id*. at 36].

Sergeant Hall's testimony that he observed the vehicle speeding is also internally consistent. Despite Sergeant Hall immediately following the speeding vehicle, he could only see the vehicle's taillights as it turned onto North Chamberlain Street when he crested the hill [*Id*. at 19–20].[3] Sergeant Hall's testimony that he stopped Defendant for speeding is consistent

---

[3] Sergeant Hall first gave a summary of the events of that evening, stating he saw a speeding car, he followed it "work[ing] on closing the gap, trying to catch the car[ and e]ventually got behind the car as it turned on to North Chamberlain" [Doc. 378 p. 10]. In his more detailed description of

10

with his conduct after stopping the vehicle, when he gathered Defendant's driver's license and asked about the vehicle's registration [*See* Doc. 378 p. 10], rather than sending Defendant on his way when he saw the vehicle was not driven by Michael Ledford. Moreover, Sergeant Hall's testimony that he estimated Defendant to be going at least fifty miles per hour is consistent with his police report, which states that he stopped Defendant because he was going fifty miles per hour in a thirty-mile-per-hour zone [*See* Doc. 261-1 p. 5; *see also* Doc. 399 p. 16].

Sergeant Hall's testimony that the vehicle was speeding also remains uncontradicted by any extrinsic evidence other than Defendant's testimony. Defendant faults Sergeant Hall's testimony because he had neither a radar reading nor video footage of the speeding vehicle. Sergeant Hall explained his radar was activated that night but did not lock onto the speeding vehicle when it came through the intersection because he was parked at an angle [*Id*. at 7–8]. Sergeant Hall explained his body camera was not reliably functioning because it was an older model and the battery would not last through the end of a shift [*Id*. at 15–16, 22–23]. Although Defendant denied he was going over thirty miles per hour, he testified that his car was not incapable of reaching speeds of more than thirty miles per hour despite its state of disrepair [*Id*. at 36]. These circumstances considered as a whole show Sergeant Hall's testimony that he observed Defendant speeding to be credible and that he had probable cause to stop Defendant's vehicle for speeding.

The undersigned also continues to make no finding regarding Defendant's statements following his arrest. Instead, the undersigned finds that Defendant was properly arrested on an outstanding warrant, two guns were found on his person as he struggled with the arresting officers,

---

events on cross-examination, however, Sergeant Hall testified that when the speeding car turned left onto North Chamberlain, he was trying to catch up to it and he "probably was just cresting this hill as he was making or probably had made or was in the process of making the left turn onto Chamberlain" [*Id*. at 19–20]. Sergeant Hall further testified that he "was able to see [the Camero's] tail lights when I made that turn" onto North Chamberlain [*Id*. at 20].

11

the officers found controlled substances in his fanny pack incident to his arrest, and the officers could properly search Defendant's car and the containers therein incident to his arrest [Doc. 399 pp. 19–23].

For these reasons and even considering the evidence from the January 12 evidentiary hearing bearing upon Sergeant Hall's credibility, the undersigned continues to recommend the denial of Defendant's suppression motion.

## IV. CONCLUSION

For all the reasons explained herein and in the prior Report and Recommendation [Doc. 399], the undersigned respectfully **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Suppress [**Doc. 256**].[4]

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide de novo review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

12